IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

      Plaintiff-Respondent,

vs.

SANTOS GONZALEZ-CASTAÑON,

      Defendant-Movant.

CIVIL NO. 03-723 MCA/LFG
CRIM. NO. 02-737 MCA

**MAGISTRATE JUDGE'S FINDINGS
AND RECOMMENDED DISPOSITION**[1]

**Findings**

1.  This is a proceeding on a Motion to Vacate, Set Aside or Correct Sentence pursuant to 28 U.S.C. § 2255, filed June 13, 2003.  Movant Santos Gonzalez-Castañon ("Gonzalez-Castañon") attacks the judgment and sentence entered by the United States District Court for the District of New Mexico in United States v. Gonzalez-Castañon, No. CR 02-737 MCA.

2.  As grounds for this motion Gonzalez-Castañon states that: (1) his attorney misled him by telling him he would be sentenced to 18-24 months if he pled guilty, and instead he got 42 months;

---

[1] Within ten (10) days after a party is served with a copy of these findings and recommendations, that party may, pursuant to 28 U.S.C. § 636(b)(1), file written objections to such findings and recommenda-tions.  A party must file any objections with the Clerk of the U.S. District Court within the ten-day period allowed if that party wants to have appellate review of the findings and recommendations.  If no objections are filed, no appellate review will be allowed.

and (2) the sentence he received exceeded the maximum sentence authorized by the statute under which he was convicted.  He also asserts, although it does not appear to be a specific ground for his motion, that he was not informed of his right to appeal.

3.  The court rejects Gonzalez-Castañon's contentions and recommends that his motion be denied.

## Background

4.  Gonzalez-Castañon waived prosecution by indictment and pled guilty to an information filed May 7, 2002, charging him with violation of 8 U.S.C. § 1326(a)(1) and (a)(2), and 8 U.S.C. § 1326(b)(2).  [*See* Docs. 14, 16 in CR 02-737].  The statutes under which he was charged forbid re-entry into the United States without the consent of the Attorney General, by a deported alien previously convicted of an aggravated felony.  The information recited that Gonzalez-Castañon had previously been convicted of an aggravated felony as defined in 8 U.S.C. § 1101(a)(43), that being Transportation of Illegal Aliens; that he was thereafter deported on or about November 2, 2001; and that he re-entered the country illegally on or about February 1, 2002.

5.  In the plea agreement that Gonzalez-Castañon signed [Doc. 17 in CR 02-737], he stated that he had reviewed all aspects of the case with his attorney and was satisfied with his attorney's representation; he agreed to plead guilty to violation of 8 U.S.C. § 1326(a)(1) and (a)(2), and 8 U.S.C. § 1326(b)(2); and he stated that he understood the maximum penalty the Court could impose included 20 years' imprisonment and a fine of $250,000.

6.  The United States and Gonzalez-Castañon also agreed and stipulated in the plea agreement, pursuant to Fed. R. Crim. P. 11(e)(1)(C) (which provides that the parties may agree that

a specific provision of the Sentencing Guidelines applies),[2] that Gonzalez-Castañon's offense level under the sentencing guidelines was 19.  His criminal history category was left to be determined by the United States Probation Office and reflected in the presentence report.

7.  In the plea agreement, Gonzalez-Castañon further stated that he was aware of his right to appeal and that he knowingly waived the right to appeal any sentence imposed, except to the extent that the Court departed upwards from the guideline sentencing range.

8.  Gonzalez-Castañon also stated in his plea agreement that "The defendant agrees and represents that this plea of guilty is freely and voluntarily made and not the result of force or threats or of promises apart from those set forth in this plea agreement.  There have been no representations or promises from anyone as to what sentence the Court will impose."

9.  Gonzalez-Castañon consented to have his plea taken by a Magistrate Judge [Doc. 15 in CR 02-737], and a plea hearing was held before U.S. Magistrate Judge Joe H. Galvan on May 7, 2002.  Gonzalez-Castañon appeared with his attorney, Paul J. Rubino, and participated in the hearing with the aid of a Spanish/English interpreter.  At the hearing, the Assistant United States Attorney informed the Court and Gonzalez-Castañon of the maximum penalty he was facing, including "up to 20 years' imprisonment."  Gonzalez-Castañon told the Court that he understood the penalty that the charge carried. [Transcript of May 7, 2002 Plea Hearing, Doc. 6, Ex. A, at 5, hereafter referred to in the format, "Tr. at 5"].

10.  Gonzalez-Castañon further testified at the plea hearing that the plea agreement was explained to him, that he understood all of its terms, that he signed the plea agreement voluntarily,

---

[2]Fed. R. Crim. P. 11(e)(1)(C) was renumbered in the 2002 amendments and is now found at Fed. R. Crim. P. 11(c)(1)(C).

and that he desired to plead guilty to the charges in the information.  [Tr. at 6].  The Court informed

him that, under the plea agreement, he and the government agreed that the appropriate sentencing

guideline offense level is 19, and that the criminal history factor would be determined following an

investigation.  Gonzalez-Castañon stated that he understood these matters.  [Tr. at 7].

     11.  Gonzalez-Castañon told the Court that, aside from what was included in the written plea

agreement, no one made any promises to him to cause him to plead guilty, that no one threatened or

forced him to plead guilty, and that plea was made freely and voluntarily. [Tr. at 9].  He said he had

discussed the case with his attorney and that he was satisfied with his attorney's representation.  He

was not under the influence of any drugs or medications that would affect his ability to understand

the proceedings.  [Id.].  He admitted the truth of the factual basis for the plea, and he pled guilty to

the charges against him.  [Tr. at 10-11].

### Discussion

A.  Right to Appeal

     12.  Gonzalez-Castañon claims he was not informed that he had any right to appeal.  The

record shows, however, that Judge Galvan made the following statement to Gonzalez-Castañon at

the plea hearing, and secured Gonzalez-Castañon's assurance that he understood it:

> THE COURT:  Also by this agreement you have also voluntarily
> given up your right to appeal any valid or legal sentence that may be
> imposed.  The only exception is that after the sentencing judge
> determines what the appropriate sentence guideline level should be, if
> the sentencing judge increases it -- that is, makes it more severe --
> then and only then may you appeal your sentence.

[Tr. at 8].

     13.  In addition, the plea agreement contains the statement that "The defendant is aware that

18 U.S.C. § 3742 affords a defendant the right to appeal the sentence imposed.  Acknowledging that, the defendant knowingly waives the right to appeal any sentence within the guideline range . . .." [Doc. 17 in CR 02-737, at ¶ 9].  Gonzalez-Castañon signed the plea agreement and confirmed in open court that he understood it and agreed to waive his right to appeal.

14.  A more extensive or explicit plea colloquy was not required.  United States v. Michelsen, 141 F.3d 867, 871-72 (8th Cir. 1998).  Nor does the absence of a more extensive plea colloquy render the plea involuntary.  Id.  The judge reminded Gonzalez-Castañon at the hearing that he waived his right to appeal the sentence, and Gonzalez-Castañon stated that he understood.   The Court finds that Gonzalez-Castañon received adequate notice of his appeal rights and that he knowingly and voluntarily waived them.

15.  Gonzalez-Castañon also claims that the reason he did not appeal his conviction following the guilty plea was because he was not informed by his attorney or the court that he had a right to appeal.  However, once his plea was accepted by the court, he no longer had a right to direct appeal since he waived the right to appeal "any sentence within the guideline range applicable to the statute of conviction," and Gonzalez-Castañon's sentence was within the applicable guideline range.

16.  In any event, an attorney has no absolute duty to advise a defendant of his limited right to appeal after a guilty plea.  Laycock v. New Mexico, 880 F.2d 1184, 1187-88 (10th Cir. 1989). The sentencing court must inform a defendant of this limited right to appeal the sentence following a guilty plea; see, Fed. R. Crim. P. 32(j)(1)(B).  Here, however, Gonzalez-Castañon waived his right to appeal as long as the sentence imposed was within the guideline range.  The judge who took the plea advised Gonzalez-Castañon that if the sentence exceeded the guideline range, he could appeal. At the disposition hearing, the sentencing judge did inform Gonzalez-Castañon of his appeal rights.

[Doc. 21 in CR 02-737].  Indeed, even if he had not been informed of this right, there would be no prejudice given that Gonzalez-Castañon was sentenced within the guidelines.

B.  Ineffective Assistance and Voluntariness of Plea

17.  Gonzalez-Castañon also asserts that he was misled by his attorney, who informed him that if he pled guilty, he would receive a sentence of 18-24 months.  The actual sentence given was 42 months.  To the extent this assertion can be analyzed as an allegation of ineffective assistance of counsel, the Court rejects it.

18.  To establish ineffective assistance of counsel, Gonzalez-Castañon must make a two-prong showing:  (1) that counsel's performance was constitutionally defective; and (2) that the deficient performance prejudiced the defense, in that counsel's errors were so serious as to deprive the defendant of a fair trial with a reliable result.  Strickland v. Washington, 466 U. S. 668, 687, 104 S. Ct. 2052, 2064 (1984); *accord*, Rogers v. United States, 91 F. 3d 1388, 1391 (10th Cir. 1996).

19.  To prove deficient performance, Gonzalez-Castañon must overcome the presumption that counsel's conduct was constitutionally effective.  Duvall v. Reynolds, 139 F. 3d 768, 776 (10th Cir. 1998).  Scrutiny of counsel's performance must be highly deferential and must avoid the distorting effects of hindsight.  Miles v. Dorsey, 61 F. 3d 1459, 1474 (10th Cir. 1995). In order to be found constitutionally ineffective, trial counsel's performance must have been completely unreasonable, not merely wrong, so that it bears no relationship to a possible defense strategy.  Hoxsie v. Kerby, 108 F. 3d 1239, 1246 (10th Cir. 1997).

20.  To show ineffective assistance in the context of a guilty plea, the movant must establish that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty but instead would have insisted on going to trial.  Hill v. Lockhart, 474 U.S. 52, 59, 106 S. Ct. 366,

370 (1985).  Gonzalez-Castañon does not argue that he would have insisted on going to trial if his attorney had informed him he might face a 42-month sentence.  Indeed, in both in the plea agreement and at the plea hearing, Gonzalez-Castañon was informed that he could, in fact, receive a sentence of 20 years if he insisted on going to trial.  It is apparent that the plea agreement negotiated by his attorney conferred a substantial benefit on him, and even if he was misinformed, there has been no prejudice shown.

21.  In addition, Gonzalez-Castañon has not produced any evidence, by way of affidavit or otherwise, to support his contention that his attorney told him he would face only 18-24 months if he pled guilty.  All parties agreed that Gonzalez-Castañon's guideline offense level was 19, and the lowest possible guideline range for this level 19 is 30-37 months, U.S. Sentencing Guidelines Manual, Ch. 5, Part A, "Sentencing Table" (2002); thus, his plea agreement would have made an 18-24 month sentence impossible.  And, even if his attorney did underestimate and misinform Gonzalez-Castañon of the possible sentence, "[a] miscalculation or erroneous sentence estimation by defense counsel is not a constitutionally deficient performance rising to the level of ineffective assistance of counsel." United States v. Gordon, 4 F.3d 1567, 1570 (10th Cir. 1993).

22.  The Court also rejects Gonzalez-Castañon's implicit claim that his plea was involuntary, because it was based on his attorney's alleged misstatement regarding the length of his sentence if he accepted the plea offer.  As noted above, Gonzalez-Castañon was informed that he faced a possible sentence of 20 years. He stated at his plea hearing, and represented by his signature on the plea agreement, that he discussed the agreement with his attorney, that he was satisfied with counsel's representation, that he understood the consequences of the plea, that his plea was freely and voluntarily made, and that no one promised him anything other than what was set forth in the plea

agreement.  "Solemn declarations in open court carry a strong presumption of verity."  <u>Blackledge v. Allison</u>, 431 U.S. 63, 74, 97 S. Ct. 1621, 1629 (1977).  "A defendant's statements at a plea hearing should be regarded as conclusive as to truth and accuracy in the absence of a believable, valid reason justify a departure from the apparent truth of those statements."  <u>United States v. Estrada</u>, 849 F.2d 1304, 1306 (10th Cir. 1988).

23.  Gonzalez-Castañon has not presented anything to this Court to demonstrate that his attorney materially misrepresented the consequences of his plea, *see*, <u>Laycock v. New Mexico</u>, 880 F.2d 1184, 1186 (10th Cir. 1989), and the Court cannot say that he was prejudiced in any way by his attorney's representation with regard to the plea negotiations.

C.  <u>Sentence Authorized by Statute</u>

24.  Finally, Gonzalez-Castañon asserts that the sentence he received exceeds that authorized by the statute under which he was convicted.  This argument is without merit.

25.  Gonzalez-Castañon claims that he was sentenced under 8 U.S.C. § 1326(a)(1), which carries a sentence of 18-24 months, whereas the judge gave him 42 months.  However, the statutes under which he was charged in the information, and to which he pled guilty of violating, and which are explicitly referenced in the judgment, are 8 U.S.C. §§ 1326(a)(1), 1326(a)(2), and 1326(b)(2). [*See*, Docs. 14, 17, 22 in CR 02-737].

26.  Subsections (a)(1) and (a)(2) of § 1326 provide for a maximum penalty of 2 years' imprisonment for reentry without permission by a deported alien.  Subsection (b)(2) provides for a maximum penalty of 20 years for an alien whose removal was subsequent to a conviction for commission of an aggravated felony.  Gonzalez-Castañon does not contest that he was previously deported following conviction of an aggravated felony, nor that he re-entered without permission.

8

[Doc. 17 in CR 02-737; Tr. at 10-11].  Thus, Gonzalez-Castañon was validly sentenced under the applicable criminal statutes.

## **<u>Recommended Disposition</u>**

That the motion be denied and the case dismissed with prejudice.

Lorenzo F. Garcia
Chief United States Magistrate Judge